258 So.2d 242 (1972)
SAM SHAINBERG COMPANY OF JACKSON, a Corporation, and Sam Shainberg Company, a Tennessee Corporation,
v.
Mrs. Carrie M. BARLOW.
No. 46513.
Supreme Court of Mississippi.
February 15, 1972.
*243 Watkins & Eager, Hassell H. Whitworth, Jackson, for appellant.
Rufus Creekmore, E. Michael Marks, Jackson, for appellee.
ROBERTSON, Justice:
The complainant, Mrs. Carrie M. Barlow, recovered a judgment for $23,044.35 on an attachment in chancery against Sam Shainberg Company of Jackson, a Mississippi corporation, and Sam Shainberg Company, a Tennessee corporation, jointly and severally, in the Chancery Court of the First Judicial District of Hinds County, Mississippi. No process was had on Loree Footwear Corporation, the manufacturer of the pair of shoes complained of, and no indebtedness to Loree was admitted, so the suit against Loree was dismissed, without prejudice.
After a full trial judgment was rendered against Shainberg-Jackson, the retailer, and Shainberg-Tennessee, the wholesaler, on the theory of strict liability in tort to the ultimate purchaser and user of the shoes.
During the lunch hour on January 12, 1970, Mrs. Barlow purchased a pair of "Young Set" women's shoes from Sam Shainberg Company of Jackson. Mrs. Barlow, in her bill of complaint, averred:
"The said shoes were manufactured by the principal defendant, Loree Footwear Corporation; by it were sold to the principal defendant, Sam Shainberg Company; and by it were sold to the principal defendant, Sam Shainberg Company of Jackson, Mississippi, who in turn sold the same to complainant as aforesaid. The shoes were bought and received by the defendant, Sam Shainberg Company, without substantial change in the condition in which they were manufactured; the shoes were bought and received by the defendant, Sam Shainberg Company of Jackson, without substantial change in the condition in which they were manufactured; and the shoes were bought and received by the complainant from the defendant, Sam Shainberg Company of Jackson without substantial change in the condition in which they were manufactured."
She worked for the Illinois Central Railroad Company, on the second floor of their office building, and during the afternoon she put on these new shoes and wore them around the office. About 5:00 p.m., as she was descending the concrete steps from the second floor to the ground floor, she fell and injured herself when she reached the fifth or sixth step from the bottom. She noticed that the heel of the left shoe had come off and she found the heel close by where she fell.
Her charges against the manufacturer, Loree Footwear Corporation, were that:
"[T]he said shoes were defectively manufactured, and were not reasonably safe for normal and ordinary use as shoes and at the time said shoes were purchased *244 by complainant as aforesaid the same were in a defective condition and were unreasonably dangerous to the user thereof in that the heel of the left shoe of said pair of shoes was not properly and safely affixed to the shoe itself."
There was no averment in the bill of complaint as to any duty owed the appellee by Shainberg-Tennessee. The only averment of any duty owed by Shainburg-Jackson to appellee was:
"The principal defendant, Sam Shainberg Company of Jackson, is now, and at all times herein mentioned, was engaged in business in Jackson, Mississippi, and elsewhere in the operation of retail stores, wherein it offers for sale and sells to the public various and sundry articles of men's and women's apparel, including shoes; and as such it owed to the public, including complainant, the duty to sell only such articles of merchandise, including women's shoes, as are reasonably safe when used in the manner and for the purposes for which they were sold."
The sole basis of appellee's lawsuit was set forth on the first page of her brief in this language:
"The case was predicated on the theory of strict liability in tort, i.e. that regardless of negligence on the part of the manufacturer, distributor, or retailer; regardless of warranty, vel non, either express or implied; and regardless of privity of contract, they all were liable to Mrs. Barlow if indeed the shoes were so defective as to be unsafe for their intended use, and if indeed the defect caused the injury."
The appellants have assigned six errors which they contend were committed by the lower court. Our disposition of the following assignment of error will dispose of the whole lawsuit:
"The Chancellor committed reversible error as a matter of law in holding that Appellants, as wholesaler and retailer of the product involved, owed a legal duty to Appellee under the doctrine of strict products liability in tort under the facts and circumstances of the case."
These facts were undisputed:
(1) The shoes in question were designed and manufactured by Loree, a non-resident corporation, not a party to this suit;
(2) The shoes were sold by Loree to Shainberg-Memphis, a wholesaler;
(3) The shoes were sold by Shainberg-Memphis to Shainberg-Jackson, a retailer;
(4) The shoes were sold by Shainberg-Jackson to Appellee;
(5) Neither Shainberg-Memphis nor Shainberg-Jackson in any wise whatsoever participated in the design or manufacture of the shoes;
(6) Neither Shainberg-Memphis nor Shainberg-Jackson altered the shoes before sale; and
(7) The shoes were in exactly the same condition when sold by Shainberg-Jackson to Appellee as they were when they left the hands of the manufacturer, Loree.
We are unwilling to extend the rule of strict products liability in tort to the wholesaler and retailer under the undisputed facts of this case. These shoes were never out of their cardboard box (original package) until the retailer transferred them from the box to a rack in the Jackson store. If there were a defect, as to which we express no opinion, it was a latent defect not discoverable by Shainberg-Jackson, or indeed by Mrs. Barlow herself when she looked at these shoes on the rack, tried them on, and decided to purchase them. Where the wholesaler or distributor purchases an article from a reputable and reliable manufacturer, sells it to a retailer in its original condition, and the retailer in turn sells the article  exactly as *245 it came from the manufacturer  to a customer in the regular course of business, no duty devolves on the wholesaler or retailer to inspect and discover a latent defect.
In State Stove Manufacturing Company et al. v. Hodges et ux., 189 So.2d 113 (Miss. 1966), even though this court found for the manufacturer, State Stove, we did announce that in a proper case we would apply the developing theory of strict products liability in tort against the manufacturer. In State Stove we said:
"[W]e conclude that the appropriate standards of responsibility are well stated in Section 402A of the American Law Institute's Restatement of Torts (Second) which we adopt insofar as it applies to a manufacturer of a product and to a contractor who builds and sells a house with the product in it. It states:
"Special Liability of Seller of Product for Physical Harm to User or Consumer 
"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although
"(a) the seller has exercised all possible care in the preparation and sale of his product, and
"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller." (Emphasis added). 189 So.2d at page 118.
Applying those standards, we held that State Stove, the manufacturer, was not liable because the water heater did not reach the Hodges in the condition in which it was sold. The water heater, as manufactured and packaged by State Stove, was sold to Orgill Brothers, the wholesaler. Orgill Brothers shipped the water heater in its original package to the contractors, Yates and Gary, who had contracted with the Hodges to do a lock-and-key job of building a new home for them. Yates and Gary hired a plumber, Pittman, to install the water heater in the home being built for the Hodges.
State Stove, the manufacturer, enclosed with the water heater a set of detailed instructions which clearly stated that the water heater must have a combination temperature and pressure relief valve installed on the hot water line. These instructions contained detailed drawings showing how and where the prescribed combination valve should be installed. The warranty stated in big bold letters what it would not be effective unless the heater "was equipped with a suitable temperature and pressure relief valve." Pittman, the plumber, did not install the temperature and pressure relief valve specifically required by the manufacturer. Although he did not read these particular instructions, Pittman admitted that he knew they directed the installation of the combination valve. We held in State Stove that the proper installation of the water heater was a non-delegable duty of the contractors, and that if Yates and Gary had followed the instructions of State Stove the combination temperature and pressure relief valve would have prevented the heater from exploding.
We further stated that the liability of Yates and Gary rested both on negligence and also on strict liability in tort. We found:
"Yates and Gary were more than retailers and wholesalers. They not only sold the water heater to the Hodges, but they constructed the house for them and *246 installed the heater in it. As installed by them, without a temperature valve, this product was in a defective condition and was not reasonably safe for its intended purpose. These contractors were engaged in the business of selling and installing such a product in homes constructed by them, and they expected it to reach the user or consumer in that condition. So, they are also strictly liable in tort." 189 So.2d at 123-124.
We gave our reasons for finding the manufacturer not liable under the peculiar facts of this case:
"The Court holds that State Stove has no liability here, under Restatement section 402A, (1) because the water heater as manufactured was not in `a defective condition unreasonably dangerous to the user or consumer or to his property'; and (2) because it was not expected to and did not reach the Hodges `without substantial change in the condition in which it * * * (was) sold.' (3) Further, the negligent failure of Yates and Gary, through their agent Pittman, to follow the instructions of the manufacturer in installing the water heater, by failing to use a temperature relief valve, was the intervening, sole proximate cause of the explosion." 189 So.2d at 121.
We have specifically applied the rule of strict products liability in tort against the manufacturer where there was a latent defect in the design or manufacture of a pickup truck in the cases of Ford Motor Company v. Dees, 223 So.2d 638 (Miss. 1969), and Ford Motor Company v. Cockrell, 211 So.2d 833 (Miss. 1968).
Now, getting back to Shainberg-Jackson in the case before us, it would not be reasonable, logical or practical to place on every retail merchant the absolute duty of inspecting for latent defects every article of wearing apparel and every pair of shoes that the retailer might offer for sale. Such a rule of law would make each retail merchant an insurer or guarantor of every one of the thousands of items that he might handle merely as a sales conduit.
We think that the reasoning is sound in the following statement made by Frumer and Friedman, in their work on Products Liability (1970), § 18.01:
"If he is a mere conduit of the product which he has purchased from a reputable manufacturer, as is so frequently the case under modern merchandising practices, in most instances he will not be liable in negligence for latent defects. But if the retailer or dealer manufactures the product, or represents himself to be the manufacturer, then he has the status of a manufacturer and is subject to the same liability as a manufacturer." (Emphasis added). Page 453.
In Falstaff Brewing Corp. v. Williams, 234 So.2d 620 (Miss. 1970), we affirmed the judgment of the trial court against Falstaff, the bottler, and Bluff City Distributors, the wholesaler. In that case there was evidence that the distributor was negligent in handling the cases of bottled beer which the distributor transported in its trucks from Falstaff's plant in New Orleans to the distributor's warehouse in Natchez. The distributor again handled the bottled beer when the beer was loaded on its truck by its employee and then delivered by the distributor to the storage room of the cafe. From the evidence adduced in that case, we felt that the trial court was justified in finding both Falstaff and its distributor liable.
In the case at bar, the chancellor should have dismissed the bill of complaint. The appellee simply did not make out a case against the appellants. The judgment is reversed and judgment rendered here for appellants.
Reversed and rendered.
GILLESPIE, C.J., and JONES, PATTERSON and INZER, JJ., concur.