**John E. LOVELACE, Jr., Plaintiff,**

v.

**ASTRA TRADING CORPORATION and Chaun Ching Company, Defendants.**

**Civ. A. No. J76–58(R).**

United States District Court,
S. D. Mississippi,
Jackson Division.

Nov. 3, 1977.

James Nobles, Jr., Jackson, Miss., for plaintiff.

Lawrence J. Franck, Jackson, Miss., for defendant Astra Trading Corp.

## OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

The matter presently pending before this Court is defendant, Astra Trading Corporation's (hereinafter Astra) motion for partial summary judgment; the request for summary judgment having been previously denied. A brief factual summary of the present controversy is set forth herein.

During November or December of 1973, Edwina Lovelace, the plaintiff's wife, purchased a compact styled hair dryer (minidryer). The hair dryer in question was purchased at the Howard Brothers store on

I–55 North in Jackson, Mississippi. It appears that the mini-dryer was purchased for the plaintiff's son, Terry Lovelace, at his request. No particular brand name or style was requested. The record shows that the mini-dryer was exclusively used by Terry Lovelace, with the possible exception of a male boarder in the Lovelace home. Terry Lovelace was living at home during the time in question.

The mini-dryer apparently functioned properly until February 10, 1974. On that date, while the plaintiff and his family were at church, the family residence was severely damaged by fire. The plaintiff alleges, and seeks to prove, that the fire resulted as a direct and proximate result of the defective nature of the mini hair dryer. The dryer was left plugged in, though not in use at the time of the fire. Some 18 days after the fire in question, plaintiff was diagnosed as having extremely high blood pressure. This led to open heart surgery and a coronary bypass, resulting in plaintiff's total and permanent disability. Plaintiff alleges that this condition was brought about as a direct result of the fire. Defendant Astra disputes this allegation, claiming that plaintiff's surgery was necessitated by a pre-existing heart condition.

Defendant Astra is an importer of merchandise, importing various items primarily from the Far East. It appears to be conceded that Astra did not manufacture the mini-dryer in issue. Astra imported and distributed approximately 48,000 mini-dryers. The record also shows that some of these mini-dryers were purchased from Astra by the Howard Brothers chain.

Astra's agent in the Far East was, for the transaction in question, the Chaun Ching Co., defendant herein. Chaun Ching is an exporter and manufacturer of sundry goods. The affidavit of Frank Friedheim, Astra's president, and board chairman, states that the dryers were actually manufactured by the Wan Nien Electric Appliance Company of Taiwan. The record also reveals that defendant Astra furnished Chaun Ching with the design and specifications for the hair dryer it desired to import.

Production samples were returned to Astra, and the two defendants reached an agreement for the products' importation into the United States.

The mini-dryers were shipped to this country in individual boxes, with each box containing one dryer enclosed in a plastic bag. The boxes containing the individual dryers prominently bore the notation "Stellar". Stellar is a registered trademark of the defendant Astra.

Depositions filed in this case disclose that upon receiving shipments, Astra would run random sample checks. This entailed a cursory visual inspection and an actual testing of the product for a period of time thought sufficient to disclose any malfunctions. Other than these samples, the dryers were shipped to retailers in the same boxes in which Astra received them. The product was in no way altered or enhanced by Astra. The remaining facts, some disputed and some taken as established, were disposed of by this Court's denial of summary judgment in Astra's favor. Therefore, for purposes of the present motion, a more detailed factual analysis is unnecessary.

The plaintiff's suit sounds in the ever growing theory of products liability. Liability is asserted against Chaun Ching for negligence in the design and manufacture of the mini-dryer. Astra is also charged with negligence in the selection, testing and distribution of the hair dryers. Finally, plaintiff asserts that both defendants are strictly liable in tort for the property damage and personal injuries suffered by the plaintiff herein. The corporate defendants are both non-residents, therefore, jurisdiction is predicated upon the parties' diversity of citizenship. 28 U.S.C. § 1332.

Defendant Astra's motion for partial summary judgment raises two separate legal issues. First, it is asserted that since the plaintiff was neither a user nor a consumer of the product, that he is thereby barred from suing under a strict liability in tort theory. Secondly, Astra seeks a declaration limiting damages, if any, to the claims for damages to personal property. Astra maintains that the plaintiff's claim

for personal injury is, under the facts of this case, noncompensable.

■ Since this case is premised upon diversity jurisdiction, this Court sits in essence as another court of the forum state. Therefore, the substantive law of Mississippi is to be applied. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The problem presented herein is that the Mississippi Supreme Court has not yet addressed the issue of whether recovery under a strict liability in tort theory should be extended to those denominated as "bystanders".

■ However, with jurisdiction properly laid in this Court, the inability to predict how the state Supreme Court will eventually rule on this issue is no ground for a refusal to address the issue and its application to the present litigants. *Meredith v. Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Even though state law is unclear, absent some constitutional underpinnings, abstention here would be improper. See *Donohoe Const. Co., Inc. v. Maryland Nat'l. Capital Park,* 398 F.Supp. 21 (D.Md.1975).

■ Without the benefit of any state certification process, this Court must take the "role of a prophet" and seek to forecast how this issue will ultimately be resolved by the state courts. The potential for error is always present in such a case. *See generally* Brown, *Certification—Federalism in Action,* 7 Cumberland L.Rev. 455 (1977). Absent definitive guidance from Mississippi decisional or statutory law, this Court may therefore look to other available resources, i. e., decisions in other states, by other federal courts " . . . and the general weight and trend of authority." *Julander v. Ford Motor Co.,* 488 F.2d 839 (10th Cir. 1973).

Defendant Astra, in its brief and during oral argument, has stressed the point that it did not manufacture the mini-dryer that is the alleged cause of the plaintiff's damages. Defendant states that as a wholesaler, it was under no duty to inspect for latent defects, and under the authority of *Shain-*

*berg v. Barlow,* 258 So.2d 242 (Miss.1972), is absolved from liability herein.

In *Shainberg,* the plaintiff sued the wholesaler and the retailer when the heel of her shoe suddenly dislodged, thereby causing her bodily injury. The manufacturer was not joined as a party-defendant. The court stated the applicable rule thusly:

"Where the wholesaler or distributor purchases an article from *a reputable and reliable manufacturer,* sells it to a retailer in its original condition, and the retailer in turn sells the article—exactly as it came from the manufacturer—to a customer in the regular course of business, *no duty devolves* on the wholesaler or retailer *to inspect and discover a latent defect."* 258 So.2d at 244 (emphasis added).

The court concluded that the co-defendants could not be held accountable, reasoning that a contrary holding would make " . . . each retail merchant an insurer or guarantor . . ." of articles sold in its capacity as a mere sales conduit. *Id.* at 246.

However, certain factors take the case *sub judice* out of the purview of *Shainberg.* First, on this motion for partial summary judgment, this Court is unwilling to take judicial notice and assume that Astra did in fact deal with a "reputable and reliable manufacturer". Secondly, plaintiff has raised serious factual issues as to Astra's knowledge of the defective nature and propensities of the mini-dryers. Plaintiff claims that such knowledge preceded the fire in issue here. If established, *Shainberg* would be, by its facts, inapplicable here. The defendants in *Shainberg* had no advance notice that the heels on a certain brand of shoes were prone to collapse. Plaintiff's assertion here is pertinent:

"The seller of a product has a duty to test or inspect it to determine whether it is dangerous where he has knowledge of defects in the product, or where he is otherwise put on notice of such defects (by receiving complaints regarding the injury-causing product . . . ." Hursh 1 *American Law of Products Liability* 2d § 245 at 261.

Additional facts mitigate in favor of plaintiff's position here. The record so far reveals that Astra was not a stereotypical wholesaler or retailer. On the contrary, Astra selected the design for the hair dryers and approved the prototype before full scale manufacturing began. Therefore, defendants' conduct goes far beyond that of a mere "sales conduit".

Finally, the boxes containing the individual mini-dryers were distinctively emblazoned "Stellar", defendant Astra's trademark. (The importance attached to this point of course depends upon plaintiff's proof that a "Stellar" dryer was in fact purchased). The *Shainberg* court noted the relevance of such a fact:

".  .  . But if the retailer or dealer manufactures the product, *or represents himself to be the manufacturer,* then he has the status of a manufacturer and is subject to the same liability as a manufacturer. (Emphasis added). Page 453". 258 So.2d at 246. (Quoting Frumer & Freidman *Products Liability* § 18.01 (1970).

Therefore, the markings on the individual boxes would indicate, to the average consumer, that they were purchasing a "Stellar" manufactured product. Legal support for this proposition is found in the *Restatement (Second) of Torts* § 400 (1965), which provides that one "putting out" a product as his own is subject to a manufacturer's liability even though the product in question was in fact manufactured by another. Comment D to § 400 provides that one "puts out" a product as his own when he markets it ".  .  . under his name or affixes to it his trade name or trademark". This rule has been applied and followed in Mississippi. E. g., *Swift Co. v. Hawkins,* 174 Miss. 253, 164 So. 231 (1935). *Accord, Carter v. Bancroft & Sons,* 360 F.Supp. 1103 (E.D.Pa.1973); *Sears v. Morris,* 273 Ala. 218, 136 So.2d 883 (1962). The foregoing principal is soundly based in logic, and serves to meet the reasonable expectations of the consuming public. Therefore, *Shainberg's* applicability to the instant case fades into oblivion, as defendant Astra's status shifts to that of a manufacturer.

Just as motorists on the Gulf Coast soon learn that all roads lead to Vancleave, any discussion of products liability law in Mississippi will have its roots in the seminal decision of *State Stove Mfg. Co. v. Hodges,* 189 So.2d 113 (Miss.1966), *cert. denied sub nom., Yates v. Hodges,* 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967). In *State Stove,* the plaintiff homeowner sued the manufacturer of a water heater and the builder-contractor who installed it, when after installation, it subsequently exploded to plaintiff's chagrin. The court's holding in absolving the manufacturer of liability in that case is not as important to the present controversy as is the doctrinal synthesis enunciated by the Mississippi Supreme Court.

The court in *State Stove* explicitly adopted § 402A of the Restatement (Second) of Torts, ".  .  . insofar as it applies to a manufacturer of a product and to a contractor who builds and sells a house with the product in it." 189 So.2d at 118. Later cases disclose, however, that the theory of strict products liability as set forth in § 402A has not been limited to those cases falling within a factual analogue to *State Stove. E. g., Ford Motor Co. v. Matthews,* 291 So.2d 169 (Miss.1974); *Hamilton Fixture Co. v. Anderson,* 285 So.2d 744 (Miss. 1973).

As set forth in *State Stove,* Section 402A, provides:

"(1) *One who sells* any product in a defective condition unreasonably dangerous to the user or consumer or to his property *is subject to liability* for physical harm thereby caused *to the ultimate user or consumer, or to his property,* if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product

from or entered into any contractual relation with the seller." (emphasis added).

It is readily apparent that the rule, by its very terms, extends liability to users and consumers. The hair dryer in question was kept in the plaintiff's house, however, only by a strained construction could plaintiff be construed as either a user or consumer. Therefore, for purposes of this motion, Mr. Lovelace will be deemed a "bystander". And, it should be noted that the Institute, by caveat, expressed no opinion on the issue of extending § 402A liability to bystanders.

As mentioned earlier, Mississippi courts have not addressed this issue yet. However, certain intimations do appear. *State Stove* expressly abrogated the requirement of privity in a suit by a consumer against a manufacturer, and stated that since liability sounds in tort, warranty concepts are irrelevant. Plaintiff's brief directs the Court to *Miss.Code Ann.* § 75–2–318 (1972). Section 2–318 of the U.C.C. delineates the scope of warranty protection under the code, with liability extending to include members of the purchaser's household, or guests therein. However, this Court does not perceive that plaintiff advances any warranty theory of liability. Accordingly, since strict liability in tort and breach of warranty are two different breeds of cat, this Court does not feel that the adoption of U.C.C. § 2–318 necessarily implies any legislative, or judicial, intent to extend liability to bystanders in all circumstances and under all causes of action.

More on point is the quotation from *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962), wherein the plaintiff recovered from the manufacturer for injuries from a power tool purchased by the plaintiff's wife.

> "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. . . ." Quoted in *State Stove,* 189 So.2d at 119.

The Mississippi Supreme Court also quoted with approval Dean Prosser's summary of the effect of *MacPherson v. Buick Motor Co.:*

> "The conclusion is clear that the duty extends to any one who may reasonably be expected to be in the vicinity of the chattel's probable use, and to be endangered if it is defective . . . ." *Id.* at 116.

This Court recognizes that Dean Prosser's statement refers to claims under a negligence theory, and not strict products liability. However, as discussed *infra,* negligence concepts are finding useful application in strict products liability cases, even though negligence itself need not be proven.

■ In Mississippi, strict liability is predicated upon three elements, to-wit:

1. Plaintiff's proof that his injury was caused by the product in question;

2. Proof that the injury resulted from a defect in the product which rendered it unreasonably dangerous; and,

3. Proof that the defect existed at the time it left the hands of the manufacturer. *Early-Gary, Inc. v. Walters,* 294 So.2d 181 (Miss.1974). *See generally,* Wade, *On the Nature of Strict Tort Liability for Products,* 44 Miss.L.J. 825, 837–38 (1973), wherein the author lists the factors to be considered in determining whether *vel non* a product is "unreasonably dangerous".

Negligence concepts found application in *Walton v. Chrysler Motor Corp.,* 229 So.2d 568 (Miss.1970), where the plaintiff's car was struck from the rear and the resulting injuries were allegedly aggravated due to a defect in the plaintiff's car. In holding for the defendant, the Mississippi Supreme Court stated:

> ". . . but this rule [strict liability] does not eliminate the requirement that, even where there is a defect in the product, that *there must be some duty owed to the plaintiff* with regard to the defect . . . ." *Id.* at 573 (emphasis added).

And, in *Ford Motor Co. v. Cockrell,* 211 So.2d 833 (Miss.1968), Dean Prosser's observations as set forth in *State Stove* were once again applied.

"The conclusion is clear that the duty extends to anyone who may reasonably be expected to be in the vicinity of the chattels' probable use, and to be endangered if it is defective." *Id.* at 836. Thus, without explicit reference, the Mississippi Supreme Court was impliedly applying concepts of foreseeability, traditionally an element of a count in negligence, to a strict liability case. For a discussion on the application of negligence concepts to strict liability cases in Mississippi, see Maraist & Barksdale, *Mississippi Products Liability—A Critical Analysis*, 43 Miss.L.J. 139, 148–52 (1972). Finally, as pointed out *infra*, other courts have used the concept of foreseeability in determining whether the umbrella of strict liability also shields bystanders.

Absent more definitive guidance from the Mississippi cases, this Court now turns to the decisional law of other jurisdictions, with particular emphasis on ". . . the general weight and trend of authority." *Julander v. Ford Motor Co., supra.*

■ As noted earlier, the American Law Institute, by caveat to § 402A, refused to express an opinion as to whether the theory of strict liability in tort would inure to the benefit of those who are neither users nor consumers. However, Comment C thereto sets forth the general policies underlying the strict liability concept. Seriatim, and in brief, § 402A is premised upon the assumptions that a seller assumes a special responsibility to the public; that the public has a right to expect reputable sellers to stand behind their products; that public policy demands the cost of injuries due to defective products be placed on those who market them; and, such injuries are properly treated as a cost of production and insurable risks by those in the best position to seek such protection. If the general policies and the intent of the drafters are taken as stated, it is apparent to this Court that third-party bystanders are properly protected by § 402A. Decisions of other courts, and the trend of recent authority, supports this conclusion.

In *Elmore v. American Motors*, 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84, 33 A.L. R.3d 406 (1969), the plaintiff's car malfunctioned. The plaintiff lost control, crossed the roadway and struck a second plaintiff's (Waters) car. The lower court sustained nonsuits on behalf of the manufacturer and retailer. The California Supreme Court reversed, basing its holding on the general policy grounds that manufacturers should bear the cost of injuries caused by their defective products. For purposes of application to the present controversy, the Court in *Elmore* stated:

"*If anything, bystanders should be entitled to greater protection* than the consumer or user *where injury to bystanders* from the defect *is reasonably foreseeable.* Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders." 70 Cal.2d at 586, 75 Cal. Rptr. at 657, 451 P.2d at 89, 33 A.L.R.3d at 413 (emphasis added).

Similarly, *Chrysler Corp. v. Alumbaugh*, 342 N.E.2d 908 (Ind.App.1976), limits bystander recovery "to those whom the manufacturer or supplier should reasonably foresee as being subject to the harm caused by the defect." Defendant relies upon *Winnett v. Winnett*, 57 Ill.2d 7, 310 N.E.2d 1 (1974), in support of its position. In *Winnett*, the four year old plaintiff was injured when she put her fingers in the moving screen of a farm forage wagon. The Supreme Court of Illinois denied recovery against the manufacturer on a strict products liability theory. In so doing, that court stated:

"In our judgment the *liability* of a manufacturer properly *encompasses only those individuals to whom injuries from a de-*

*fective product may reasonably be foreseen* and only those situations where the product is being used for the purpose for which it was intended or for which it is reasonably foreseeable that it may be used." 310 N.E.2d at 4 (emphasis added). The manufacturer was therefore absolved from liability because it could not reasonably foresee that a four year old child would be allowed to put her fingers in the forage screen. However, the emphasis of the court in *Winnett* was on foreseeability, and only under the facts of that case was the plaintiff-bystander denied recovery. Therefore, the *Winnett* case is reconcilable with those allowing recovery by bystanders.

The issue has been addressed and resolved by other courts also. The court in *Ciampichini v. Ring Bros., Inc.*, 40 A.D.2d 289, 339 N.Y.S.2d 716 (1973), without hesitation overruled a prior decision denying bystander recovery and emphatically stated:

> "We resolve that issue now by laying to rest a principle which we believe outmoded and no longer adaptable to the rights of individuals in contemporary society." 339 N.Y.S.2d at 717.

Bystander recovery on a strict liability theory was also approved in *Weber v. Fidelity Cas. Ins. Co.*, 259 La. 599, 250 So.2d 754 (1971). The Kentucky court in *Embs v. Pepsi-Cola*, 528 S.W.2d 703 (Ky.1975), extended liability to a bystander whose injuries were reasonably foreseeable, and held that recovery was allowed against middlemen, as well as manufacturers. *Accord, Moss v. Polyco., Inc.*, 522 P.2d 622 (Okl. 1974). *Embs* also noted that "[O]nce strict liability is accepted, bystander recovery is *fait accompli*." 528 S.W.2d at 705.

The Missouri Supreme Court also extended strict liability recovery to bystanders in *Giberson v. Ford Motor Co.*, 504 S.W.2d 8 (Mo.1974), wherein the court, quoting from *Tucson Indus., Inc. v. Schwartz*, 108 Ariz. 464, 501 P.2d 936, 939–40 (1972), gave the basic justification for extending liability.

> "Strict liability is a public policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit

from its sale, and have the know-how to remove its defects before placing it in the chain of distribution."

Mississippi courts are generally in accord with the policy judgment that manufacturers should shoulder the costs of injuries resulting from their defective products. *E. g., State Stove, supra*, 189 So.2d at 116; *Ford Motor Co. v. Matthews*, 291 So.2d 169 (Miss.1974). Other policy reasons in support of the doctrine have been advanced, *e. g.*, Maraist & Barksdale, *supra*; Noel, *Products Liability: Bystanders, Contributory Fault and Unusual Uses*, 50 F.R.D. 321 (1970), and accepted by the courts. ". . . The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risks of personal injury and or property damage." *Darryl v. Ford Motor Co.*, 440 S.W.2d 630, 633 (Tex.1969). The general consensus therefore appears to favor extension of the strict liability doctrine to provide relief to bystanders. *See generally* 63 Am.Jur.2d, *Products Liability* § 144; Maraist & Barksdale, *supra*, 43 Miss.L.J. at 170; Noel, *supra*, 50 F.R.D. at 322–327. The issue is also addressed in *Annot.: Products Liability: Extension of Strict Liability in Tort to Permit Recovery by a Third Person who was neither a Purchaser nor User of Product*, 33 A.L.R.3d 415 (1970).

One final case is worth noting. In *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80 (Fla.1976), the plaintiff was crossing the street to board a bus when she was run over by a Caterpillar tractor driven by a contractor's employee. The Fifth Circuit Court of Appeals certified the issue of bystander recovery to the Florida Supreme Court. The Florida court noted that no adequate rationale or theoretical explanation existed to deny strict liability to bystanders. That court also summed up the situation well by its quotation from *Caruth v. Mariani*, 11 Ariz.App. 188, 463 P.2d 83, 85 (1970), that:

> "All states which have adopted the theory of strict tort liability have extended the theory to the bystander when called upon to do so . . . ." 336 So.2d at 89.

The same conclusion is reached by the author in *Strict Products Liability to the Bystander: A Study in Common Law Determinism*, 38 U.Chi.L.Rev. 625, 635.

■ Part of the basis for the Florida court's holding is the notion that any restriction of the doctrine to users or consumers only ". . . would have to rest on the vestige of the disappearing privity requirement." *Id.* at 89. As mentioned earlier, the Mississippi Supreme Court in *State Stove* abandoned the privity requirement in suits by a consumer against a manufacturer. The court thereupon concluded:

"The obligation of the manufacturer must become what in justice it ought to be—an enterprise liability . . . The cost of injuries or damages, *either to persons or property*, resulting from defective products, should be borne by the makers of the products who put them into the channels of trade . . . This doctrine of strict liability applies when harm befalls a *foreseeable bystander* who comes within range of the danger." 336 So.2d at 92 (emphasis added).

Based upon the foregoing, this Court holds that the plaintiff herein may avail himself of the strict liability doctrine enunciated in § 402A of the Restatement, and as adopted and construed by the Mississippi Supreme Court. Defendants' motion for partial summary judgment on this ground is therefore denied.

This Court feels confident that in the best interests of justice and sound judicial policy that it is making the correct decision. The Court regrets that it may be giving these parties a "ticket for one ride only", *Brown, supra*, at 456, but such is the inherent danger in our federal system. This Court has previously taken one small step in the present direction in *Howard v. Sears*, 437 F.Supp. 883 (S.D.Miss.1977) (bystander allowed to sue under strict liability theory, verdict for defendant on plaintiff's failure of proof).

The court in *West, supra*, notes that 31 states have adopted § 402A in one form or another, with two federal court "predictions" in Utah and Vermont. Even a cursory perusal of the cited cases discloses that Mississippi was in the forefront in adopting § 402A. This Court has no reason to believe that the state supreme court, given the appropriate case, would not extend strict liability concepts to include "bystanders". The Mississippi court's willingness to be among judicial innovators in this area indicates a concern for consumers in general; and a sensitivity to the delicate interplay among responsible social policy, enterprise liability and the reasonable expectations of the consuming public.

Defendants' second contention, that plaintiff may not recover for his personal injuries, may be dealt with in a more summary manner. First, § 402A by its very terms speaks to both property damage and personal injuries arising from the use of a defective product. Secondly, defendants' case authority is distinguishable in its application to the case *sub judice*. In *Aldridge v. Johnson*, 318 So.2d 870 (Miss.1975), the plaintiff was denied recovery for her mental anguish where her family doctor testified that there was no causal relationship between the accident in issue and plaintiff's resultant nervous condition. Defendant herein has presented materials indicating that plaintiff may have had a pre-existing heart condition. However, the record also discloses that the plaintiff is prepared to prove, by expert testimony, that his personal injuries were a direct result of the fire allegedly caused by defendants' defective mini-dryer. *Todd v. Aetna Cas. & Surety Co.*, 219 So.2d 538, *cert. den.*, 222 So.2d 66 (La.1969), is a case where the court refused to hold the defendant liable for totally unforeseeable consequences of his actions.

Thirdly, the cases disclose that foreseeability is at the heart of a strict liability case. Foreseeability is a matter for the trier of fact, and the plaintiff should be allowed to prove his case. Therefore, partial summary is inappropriate. Nothing said herein is meant to bar either party from raising the issue anew at the conclusion of the trial on this matter.

For the foregoing reasons, defendants' motion for partial summary judgment is hereby denied in all respects.

The parties may submit an appropriate order within the time allowed by the local rules of this Court.