260 F.Supp.2d 722 (2003)
In re BRIDGESTONE/FIRESTONE, INC., Tires Products Liability Litigation.
TURNAGE, et al,
v.
FORD MOTOR COMPANY, et al.
King, et al.,
v.
Ford Motor Company, et al.
Burley, et al.,
v.
Ford Motor Company, et al.
Pierce, et al.,
v.
Ford Motor Company, et al.
MDL No. 1373. Nos. IP00-9373-CBS, IP01-5488CBS, IP01-5524CBS, IP01-5487CBS, IP02-5624CBS.
United States District Court, S.D. Indiana, Indianapolis Division.
April 21, 2003.
*723 Don Barrett, Barrett Law Office, Pa, Lexington, MS, Victor Manuel Diaz, Jr. Podhurst, Orseck, Josefsberg & Eaton, Miami, FL, Mike Eidson, Colson, Hicks, Eidson, Coral Gables, FL, Irwin B. Levin, Cohen & Malad, Indianapolis, IN, William E. Winingham, Wilson, Kehoe & Winingham, Indianapolis, IN, for Plaintiffs.
John H. Beisner, O'Melveny & Myers, LLP, Washington, DC, Daniel P. Byron, Bingham McHale, LLP, Indianapolis, IN, Mark Herrmann, Jones, Day, Reavis & Pogue, Cleveland, OH, Thomas S. Kilbane, Squire, Sanders, & Dempsey, LLP, Cleveland, OH, Mark Merkle, Krieg Devault, LLP, Indianapolis, IN, Randall Riggs, Locke Reynolds, LLP, Indianapolis, IN, Colin P. Smith, Holland & Knight, LLC, Chicago, IL, Thomas G. Stayton, Baker & Daniels, Indianapolis, IN, for Defendants.

ORDER ON MOTIONS TO REMAND
BARKER, District Judge.
Each of these cases was filed in Mississippi state court and removed by defendant *724 Ford Motor Company ("Ford") to federal district court in Mississippi.[1] In each case, defendant Bridgestone/Firestone, Inc., ("Firestone") joined in Ford's Notice of Removal; some of the other defendants in each case also joined in the removal. The plaintiffs in each case filed a Motion to Remand while the case was pending in federal court in Mississippi, and the motions were fully briefed. The cases later were transferred to this court for consolidated and coordinated proceedings pursuant to 28 U.S.C. § 1407 by order of the Judicial Panel on Multidistrict Litigation. Following that transfer, the parties filed supplemental briefs regarding the remand motions. For the reasons set forth below, the plaintiffs' motions are GRANED, and each of these cases is REMANED to the Mississippi state court from which it was removed.

FACTUAL AND PROCEDURAL BACKGROUND
Each of these cases was filed by a group of plaintiffs: by the Court's count, there were three original plaintiffs in Burley; over twenty original plaintiffs in Pierce; over forty original plaintiffs in King; and over thirty original plaintiffs in Turnage.[2] Most of the plaintiffs are residents of Mississippi, although a few reside in Alabama, Texas, Louisiana, Kentucky, Oklahoma and Tennessee. Most, but not all, of the plaintiffs were injured in accidents involving Ford Explorers and/or the Firestone tires that are the subject of this MDL.[3] The accidents at issue are unrelated to one another and happened at various times in various locations under various circumstances. Each of the Complaints[4] alleges that the Firestone tires and Ford Explorers owned by the plaintiffs were defective and assert state law claims for strict liability, negligence, and breach of warranty against Ford, Firestone, and certain automobile and tire dealers who allegedly sold Explorers and/or tires to some of the plaintiffs. There are eleven such "dealerdefendants" named in Pierce, three in Burley, sixteen in King, and fifteen in Turnage.[5]

DISCUSSION
The defendants[6] assert that both federal *725 question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to 28 U.S.C. § 1332 exist in these cases. Specifically, the defendants assert that diversity jurisdiction exists because the dealer defendants were fraudulently joined in this action in order to defeat diversity of citizenship. The defendants further allege that federal question jurisdiction exists because the plaintiffs' negligence claim is based, in part, on the failure of Ford and Firestone to recall the allegedly defective tires at issue and, the defendants argue, any duty to recall would have arisen not under state law, but under the federal National Traffic and Motor Vehicle Safety Act ("Safety Act"). Thus, defendants argue, "in order to prevail on their negligence claim, plaintiffs would have to demonstrate that Ford and Firestone violated the Safety Act. As a matter of law, because such an inquiry would involve a very substantial federal question, plaintiffs' claim necessarily arises under federal law." Turnage Notice of Removal at ¶ 13; King Notice of Removal at ¶ 9; Burley Notice of Removal at ¶ 13; Pierce Notice of Removal at ¶ 9 (emphasis in original).

No Removal on Basis of Federal Question Jurisdiction
The defendants' assertion that federal question jurisdiction is present in these cases is easily disposed of, as the Court already has addressed, and rejected, the same arguments in a very similar context. See Nisbett v. Bridgestone Corp., 203 F.Supp.2d 1032, 1036-37 (S.D.Ind. 2002).[7] As in Nisbett, the plaintiffs in these cases do not assert any claim under federal law; indeed, the Complaints affirmatively disavow any federal claim and expressly state the plaintiffs' intent to raise and pursue only claims arising under state law. As noted above, the plaintiffs, like the plaintiffs in Nisbett, do assertas a factual basis for their state law claims that the defendants failed to recall the allegedly defective tires, an assertion that implicates the Safety Act because it is the Safety Act that creates a statutory duty to recall defective tires under certain circumstances.
For the reasons discussed at length in Nisbett, the fact that the plaintiffs' state law claims may implicate certain provisions of the Safety Act is not sufficient to create federal question jurisdiction, especially in light of the fact that the Safety Act does not create a private right of action. See id. (citing Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). Indeed, the facts of this case fit squarely with those in Thompson, in which the Court held that "a complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined there should be no private, federal cause of action for the violation, does not state a claim `arising under the Constitution, laws, or treaties of the United States.' " Thompson, 478 U.S. at 817, 106 S.Ct. 3229. Accordingly, there is no federal question jurisdiction in these cases.

No Removal on Basis of Diversity Jurisdiction
The defendants' argument that these cases were properly removed because diversity jurisdiction is present in each of them is two-fold. First, the defendants argue that the dealer-defendants were fraudulently joined because the plaintiffs have no realistic chance of recovering *726 against them on any theory. Second, they argue that the plaintiffs in each of these cases were fraudulently misjoined and that the Court should sever each plaintiffs[8] claim into its own action. That way, even if the dealer-defendants were not fraudulently joined, only those plaintiffs who have named their non-diverse dealer as a defendant would be entitled to remand; the remaining cases would be subject to diversity jurisdiction and remain in federal court.

The Dealer-Defendants Were Not Fraudulently Joined
The complete diversity of citizenship necessary to confer federal jurisdiction under 28 U.S.C. § 1332 clearly is lacking on the face of the complaints in these cases, inasmuch as each case includes some plaintiffs and some defendants who are citizens of Mississippi. However, the defendants argue that the dealer-defendants were fraudulently joined in these cases in order to defeat diversity jurisdiction.
[Plaintiffs] may not join an in-state defendant solely for the purpose of defeating federal diversity jurisdiction. Such joinder is considered fraudulent, and is therefore disregarded, if the out-of-state defendant can show there exists no "reasonable possibility that a state court would rule against the in-state defendant."
Schwartz v. State Farm Mutual Auto. Ins. Co., 174 F.3d 875, 878 (7th Cir.1999) (citations omitted).[9] Thus, if under the law of Mississippi there is "no reasonable possibility" that the plaintiffs will recover against the dealer-defendants, diversity jurisdiction exists and removal was proper. The removing defendants bear the burden of establishing fraudulent joinder, and in determining whether the plaintiffs' claims against the dealer-defendants have any possibility of success, we look beyond the pleadings at the facts on record. See Hutchins v. Ford Motor Co., 204 F.Supp.2d 1149,1153 (S.D.Ind.2002).
The defendants argue that the plaintiffs have failed to assert any claims against the dealer-defendants because the Complaints do not allege which dealer-defendant sold what product to which plaintiff. It is true that the Complaints are not model pleadings; however, they certainly satisfy the minimal requirements of notice pleading under Federal Rule of Civil Procedure 8(a).
The defendants also point to the fact that the plaintiffs' allegations in the Complaints focus on various acts of Ford and Firestone, not the dealer-defendants. This, the defendants argue, makes it clear that the dealer-defendants were named by the plaintiffs "for one purpose and one purpose onlyto keep the case in Mississippi State Court, which plaintiffs consider a more favorable forum." Turnage Notice of Removal at ¶ 6; King Notice of Removal at ¶ 6; Burley Notice of Removal at ¶ 6; Pierce Notice of Removal at ¶ 6. It may be that the plaintiffs' motivation for suing the dealer-defendants was to defeat diversity jurisdiction. This is not the test for fraudulent joinder, however. "[Pjlaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." Garbie v. Daimler-Chrysler Corp., 211 F.3d 407, 410 (7th Cir.2000). The relevant question is not why the plaintiffs chose to sue the non-diverse *727 defendants, but whether the plaintiffs have viable claims against the nondiverse defendants under the applicable law.
In their responses to the plaintiffs' motions for remand, the defendants, citing Parker v. Ford Motor Co., 331 So.2d 923, 925 (Miss.1976), argue that "technically, under the common law of Mississippi, it remains good law that a dealership cannot be held liable in a products liability case for a latent defect in automotive product." This is incorrect. In Parker, the Mississippi Supreme Court relied on its holding in Sam Shainberg Co. of Jackson v. Barlow, 258 So.2d 242 (Miss.1972), a holding that was widely criticized by commentators and later referred to by the Mississippi Supreme Court itself as "anomalous if not irrational" in Coca Cola Bottling Co., Inc. of Vicksburg v. Reeves, 486 So.2d 374, 379 (Miss.1986). The defendants are correct that, in spite of its own self-criticism, the Mississippi Supreme Court declined in Reeves to take the opportunity to overrule Shainberg. Reeves, 486 So.2d at 379 (stating that notwithstanding the problems with the Shainberg decision, "the facts of the case at bar are sufficiently distinguishable from Shainberg so that this is not an appropriate case to consider overruling Shainberg"). However, the defendants neglect to acknowledge the Mississippi Products Liability Act of 1993, enacted several years after the Reeves decision, which provides for product liability actions against both manufacturers and sellers. See Miss.Code Ann. § 11-1-63 (1999);[10]see also Harges, An Evaluation of the Mississippi Products Liability Act of 1993, 63 Miss. L.J. 697, 768 (1994) ("The Mississippi Products Liability Act of 1993 effectively overrules the Shainberg decision."). It is clear that, under the applicable Mississippi law, those plaintiffs whose car and/or tire dealers have been named as defendants do assert viable claims under Mississippi law. Accordingly, regardless of the plaintiffs' subjective motives, the joinder of the dealer-defendants was not fraudulent.

The Individual Plaintiffs' Claims Were Not Fraudulently Misjoined
In addition to asserting that the dealer-defendants were fraudulently joined, the defendants also argue that in each of these cases the claims of the various unrelated plaintiffs were improperly joined into one action in order to defeat diversity jurisdiction. Therefore, the defendants argue in the alternative that we should sever the plaintiffs' claims into individual cases and remand to state court only the claims of those plaintiffs who have named a non-diverse dealer as a defendant. The claims of the remaining plaintiffs would then indisputably be subject to diversity jurisdiction and would remain in federal court.[11]
*728 The defendants' argument has a certain logical appeal. After all, if each plaintiff (or group of plaintiffs involved in a single accident) had filed his or her own lawsuit, all of the cases would have been subject to removal except those in which a non-diverse dealer-defendant was sued. Unfortunately for the defendants, however, the law, at least in the Seventh Circuit, is clear:
Even if the [non-diverse parties] were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum. Neither § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal.
Garble, 211 F.3d at 410 (citations omitted). Therefore, as long as it was procedurally permissible for all of the plaintiffs' claims in each case to be joined into one action, the claims may not be severed by this Court in order to retain jurisdiction over some of them.
If, however, the joinder of the plaintiffs' claims was not procedurally permissible, it may be possible, under the doctrine of fraudulent misjoinder, for the improperly joined claims to be disregarded for removal purposes. "Fraudulent misjoinder" refers to the joining of claims into one suit in order to defeat diversity jurisdiction "where in reality there is no sufficient factual nexus among the claims to satisfy the permissive joinder standard." Conk v. Richards & O'Neil, LLP, 77 F.Supp.2d 956, 971 (S.D.Ind.1999). The origin of the principle that the misjoinder of parties can constitute fraudulent joinder is widely attributed to the Eleventh Circuit's opinion in Tapscott v. MS Dealer Service Corp., 77 F.3d 1353 (11th Cir. 1996). In Tapscott, the court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." Id. at 1360. The court expressly did not hold that "mere misjoinder is fraudulent joinder," but rather held that in that particular case the misjoinder was "so egregious as to constitute fraudulent joinder." Id. Thus, at least under Tapscott, something more than "mere misjoinder" of parties may be required to find fraudulent misjoinder. Precisely what the "something more" is was not clearly established in Tapscott and has not been established since. In the instant cases, however, because we determine that permitting joinder would not be an abuse of discretion under the applicable law, the criteria for a finding of fraudulent misjoinder, whatever they may be, clearly are not satisfied.

Which Law Applies?
Before determining whether the plaintiffs' claims were properly joined, we must first determine whether the applicable law is Federal Rule of Civil Procedure 20 or Mississippi Rule of Civil Procedure 20. The defendants urge us to follow the decision in Coleman v. Conseco, Inc., 238 F.Supp.2d 804 (S.D.Miss.2002),[12] in which the court examined this issue at length and determined that "the joinder provisions of Rule 20 are procedural in nature" and, therefore, "Federal Rule 20, rather than Mississippi Rule 20, applies to the subject fraudulent misjoinder of plaintiffs issue." Id. at 816. We respectfully disagree with this conclusion, finding more persuasive the logic of our colleague Judge Hamilton in Conk: *729 The parties have briefed this issue of "procedural misjoinder" in terms of misjoinder under Rule 20 of the Federal Rules of Civil Procedure. Although the Eleventh Circuit in Tapscott relied on this rule [13] to determine that there was an insufficient factual nexus between claims, the court is not persuaded that the Federal Rules of Civil Procedure provide the governing legal standard. After all, when Conk filed his complaint in the Indiana court, he was not required to comply with the Federal Rules of Civil Procedure in terms of joinder of parties or claims or any other aspect of the case. To address whether Conk has any claims against [the non-diverse defendant] that are related to claims against the other [diverse] defendants, the court believes the controlling standard is essentially the same that applies to fraudulent joinder: Is there a reasonable possibility that a state court would find that Conk's claims against [the nondiverse defendant] were properly joined with his claims against the other defendants?
Conk, 77 F.Supp.2d at 971. We hold similarly that the relevant question in this case is whether the Mississippi Supreme Court would find that the plaintiffs in these cases were misjoined under Mississippi Rule 20.

Were the Plaintiffs Misjoined Under Mississippi Law?
At first blush, it would seem that the question of whether to apply Federal Rule 20 or Mississippi Rule 20 was merely academic, inasmuch as the text of the two rules is identical in all relevant respects. However, Mississippi Rule 20 has been applied to permit joinder under far broader circumstances than those under which joinder generally is permitted under Federal Rule 20. See Illinois Central R.R. Co. v. Travis, 808 So.2d 928, 933 (Miss. 2002) (citation omitted) (noting that "[t]his Court has recognized that the Official Comments to Rule 20 call for consideration on a case-by-case basis `utilizing a liberal approach toward joinder.'"). Indeed, the Mississippi Supreme Court on several occasions has quoted the official comment to Mississippi Rule 20, which reads:
The general philosophy of the joinder provisions of these Rules is to allow virtually unlimited joinder at the pleading stage but to give the Court discretion to shape the trial to the necessities of the particular case.
See Prestage Farms, Inc. v. Norman, 813 So.2d 732, 735 (Miss.2002); American Bankers Ins. Co. of Fl. v. Alexander, 818 So.2d 1073, 1075 (Miss.2001); Travis, 808 So.2d at 931 (all quoting the official comment to Rule 20).
The Mississippi Supreme Court's recent opinions regarding joinder under Rule 20 have been consistent with this philosophy of "virtually unlimited joinder." For example, in Norman, sixty-eight plaintiffs sued Prestage Farms, Inc., and seven of its contract hog farmers, alleging that the farms designed and established by Prestage and operated by the defendant hog farmers pursuant to Prestage's specifications constituted public and private nuisances. Each farm was operated by one of the defendant hog farmers, and each plaintiffs claim related to only one of the farms at issue; in other words, for each defendant farm there was a group of plaintiffs who alleged that farm constituted a nuisance, but the remaining plaintiffs had no claims involving that particular farm or defendant farmer.
The majority of the court held that the trial court did not err in denying the defendants' motion to sever "because plaintiffs' *730 claims involve many common questions of law and fact and arise out of the same series of occurrences or transactions"namely the creation and operation of the hog farms by Prestage, in concert with its contract hog farmers. The court so held in spite of the fact that the plaintiffs would have to prove both that each individual farm constituted a nuisance and that each individual plaintiff had suffered injury as a result of living near one particular farm. As the dissenting judge in the case noted:
This action involves sixty-eight plaintiffs alleging they have incurred damages as a result of one of seven separate and distinct nuisances. The many factors at issue at trial will likely include the size of the farms, the number of hogs present, the length of time the farms have been in existence, the condition of the farms, the operation of the farms and the odor levels emanating from them. Each plaintiffs claim will vary depending on their proximity to the farm, the duration of each plaintiffs exposure to odor and pollutants, the level of exposure, weather conditions and topography, the number of other livestock present in the vicinity, and the plaintiffs prior medical history. Each of these factors is highly plaintiff-specific.
Norman, 813 So.2d at 740 (Smith, P.J., concurring in part and dissenting in part).
The Court finds the facts of Norman to be indistinguishable in any significant way from the facts of the instant case. The plaintiffs' claims against Ford and Firestone arise out of their design and manufacture of allegedly defective tires and vehicles, just as the plaintiffs' claims in Norman arose out of Prestage Farm's design and operationthrough its contract hog farmersof the hog farms. It is true that the plaintiffs in these cases each will have to prove the circumstances surrounding the particular accident in which he or she was injured, including the maintenance and condition of the vehicle and car prior to the accident and what caused the accident to occur; however, as Judge Smith noted, the plaintiffs in Norman had to prove the circumstances surrounding the particular farm which he or she lived near, including "the size of the farms, the number of hogs present, the length of time the farms have been in existence, the condition of the farms, the operation of the farms and the odor levels emanating from them." Id. Each plaintiff in these cases also will have to prove his or her particular injuries resulting from his or her accident, just as the plaintiffs in Norman had to prove their injuries, which required proof of such facts as "their proximity to the farm, the duration of each plaintiffs exposure to odor and pollutants, the level of exposure, weather conditions and topography, the number of other livestock present in the vicinity, and the plaintiffs prior medical history." Id.
The Mississippi Supreme Court's holding in Travis, 808 So.2d 928, also is instructive. Travis involved the claims of nearly one hundred plaintiffs who alleged that they were exposed to asbestos while working for the defendant and suffered injury as a result of that exposure. The court found joinder to be appropriate under Mississippi Rule 20, even though the plaintiffs worked for the defendant at various different locations and over various different periods of time. The fact that each individual plaintiff would have to prove all of the circumstances of his or her own exposure and resultant injury did not make joinder improper.
Given the Mississippi Supreme Court's holdings that joinder of the plaintiffs' claims in Norman and in Travis was not improper, we are unable to say that under Mississippi law it was improper for the plaintiffs in these cases to join their claims as they did.[14] Therefore, even *731 though it seems unlikely to us that joinder in those cases would be appropriate under Federal Rule 20, there is no basis for a finding of fraudulent misjoinder under Mississippi law.

Supplemental Jurisdiction is Not Applicable
Finally, the defendants, citing Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928 (7th Cir.1996), briefly argue that because diversity jurisdiction exists over the claims of those plaintiffs who do not have claims against a non-diverse dealer defendant, this court could, and should, pursuant to 28 U.S.C. § 1367, exercise supplemental jurisdiction over the claims of those plaintiffs who do have claims against non-diverse dealer-defendants. This argument presupposes that it was appropriate to remove these cases in the first place. It was not. Pursuant to 28 U.S.C. § 1441(b), absent a federal question, an action may not be removed if any properly joined and served defendant is a citizen of the state in which the action was filed. As we have determined, the dealer-defendants, most if not all of whom are citizens of Mississippi, were properly joined in these cases; accordingly, removal was improper.

CONCLUSION
For the reasons set forth above, the plaintiffs' motions to remand in these cases are GRANTED. Turnage is REMANED to the Circuit Court of Jones County, Mississippi, Second Judicial District; King is REMANDED to the Circuit Court of Jefferson County, Mississippi; Burley is REMANDED to the Circuit Court of Hinds County, Mississippi, First Judicial District; and Pierce is REMANDED to the Circuit Court of Washington County, Mississippi. The Court further finds that the defendants' removal of these cases warrants an award to the plaintiffs of the fees and costs they incurred as a result of removal, pursuant to 28 U.S.C. § 1447(c). See Garbie, 211 F.3d at 411. The plaintiffs shall file their petitions for fees and costs within fourteen days of the date of this Order; defendants shall then have fourteen days to file any response.
NOTES
[1] Turnage was filed in Jones County Circuit Court; King in Jefferson County Circuit Court; Burley in Hinds County Circuit Court; and Pierce in Washington County Circuit Court. Pierce was removed to the United States District Court for the Northern District of Mississippi; the other three cases were removed to the Southern District of Mississippi.
[2] We say "original plaintiffs" because various plaintiffs have been dismissed from these actions since they were filed. However, for our purposes what is relevant is the status of the case at the time it was removed. See, e.g., Harmon v. OKI Systems, 115 F.3d 477, 479 (7th Cir. 1997). The manner in which the plaintiffs are listed in the various complaints makes it difficult to determine the exact number of plaintiffs in each action. This difficulty has been the subject of several orders by the magistrate judge assigned to these cases in an effort to establish with certainty which plaintiffs belong in which case.
[3] Those plaintiffs that have not been involved in accidents are pursuing claims for the replacement value of their Firestone tires, which they allege to be defective.
[4] The complaints in these actions have been subject to various amendments; the Court will use the term "Complaint" to refer to the complaint in each case that was in place at the time the case was removed.
[5] The Complaints do not specify which of the dealers sold to which of the plaintiffs; however, the parties have supplied that information as part of their supplemental briefing.
[6] Not all of the defendants in each case consented to remrval. In this context, we will use "defendants" to refer to those defendants who filed briefs in opposition to the plaintiffs' motions to remand, along with those defendants who joined in those briefs (which includes some, but not all, of the dealer-defendants in each case). In light of our other holdings, it is not necessary to address the plaintiffs' argument that the failure of some of the dealer-defendants to consent to removal is an independent basis for remanding these cases.
[7] In Nisbett, the plaintiffs asserted a state-law RICO claim that was based, in part, on the defendants' failure to recall the allegedly defective tires.
[8] The Court recognizes that there are some instances in which two or more of the plaintiffs were involved in the same accident, and does not understand the defendants to argue that those plaintiffs should not be permitted to assert their claims in a single action.
[9] Seventh Circuit law governs the removal and remand issues at issue in these cases. See Bridgestone/Firestone, Inc., ATX, ATX, II, 128 F.Supp.2d 1198, 1200 (S.D.Ind.2001).
[10] The Court notes that effective January 1, 2003, as one of the changes included in the Mississippi Civil Justice Reform Act, Miss. Code Ann. § 11-1-63 has been amended and § 11-1-64 has been added. One effect of these changes is to establish a procedure by which a defendant in a products liability action "whose liability is based solely on his status as a seller in the stream of commerce may be dismissed from a products liability claim" as long as "another defendant, including the manufacturer, is properly before the court and from whom recovery may be had for plaintiff's claim." Miss.Code Ann. § 111-64(1) & (2) (2002 Electronic Pocket Part Update). Obviously, these new provisions are not applicable to the instant cases; however, their enactment is further confirmation that at the time the instant cases were filed sellers such as the dealer-defendants were subject to suitand ultimate liabilityin product liability cases under Mississippi law.
[11] The exception to this would be the claim of Plaintiff Mindy Hunter in the King case, inasmuch as Ms. Hunter and Firestone appear to share Tennessee citizenship.
[12] The defendants also cite to the unpublished opinion granting the plaintiffs' motion to remand in Adkins v. Ametek, l:02cv728GR (S.D.Miss., Jan. 29, 2003), in which the court applied Federal Rule 20 without explanation.
[13] We note that the Tapscott court did not address the issue of whether Federal Rule 20 or the corresponding state rule should be plainapplied; it merely applied Federal Rule 20 without comment.
[14] This is not to say, however, that the Mississippi trial courts in which these cases were filed necessarily would rule that joinder was appropriate. Mississippi trial courts are given rather broad discretion to permit or deny joinder pursuant to Rule 20, Travis, 808 So.2d at 934, and in both Travis and Norman the Mississippi Supreme Court reviewed the trial court's denial of the defendants' motions to sever and found no abuse of discretion. There is nothing in either opinion, however. to indicate that the trial court would have abused its discretion had it granted the motion to sever. Therefore, while this court cannot find that the plaintiffs were fraudulently misjoined, were the defendants to file motions to sever after remand, the state courts certainly could, in their discretion, grant them.