E. H. HARMON, Plaintiff,

v.

NATIONAL AUTOMOTIVE PARTS AS-
SOCIATION, Globe–Union, Inc., Genu-
ine Parts Company, and Ruleville
Parts, Incorporated, Defendants.

DC88–101–S–O.

United States District Court,
N.D. Mississippi,
Delta Division.

Sept. 15, 1989.

Briggs Smith, Smith, Phillips & Mitchell, Batesville, Miss., for plaintiff.

Kenneth R. Shuttleworth, Shuttleworth, Smith & Webb, Memphis, Tenn., for defendants.

## OPINION

SENTER, Chief Judge.

This products liability case is before the court on the summary judgment motion of one defendant, National Automotive Parts Association (NAPA). NAPA filed its motion on October 8, 1988. On motion of the plaintiff, this court stayed decision on the motion until discovery was completed. On April 10, 1989, Magistrate Orlansky ordered the plaintiff to file a response to NAPA's motion by June 10, 1989. No response has been filed.

### I. FACTS

In 1984, the plaintiff bought a NAPA 7000 series battery from Ruleville Parts. He used this battery in his pickup truck, apparently without incident, until January 12, 1985, when the plaintiff used this battery and a set of jumper cables also purchased from Ruleville Parts to jumpstart his combine. After starting the combine, the plaintiff was removing the jumper cables from the posts of the NAPA battery when the battery exploded, hurling parts of the battery casing and battery fluid into the plaintiff's face.

The plaintiff brought suit against NAPA under five separate theories of liability.

The plaintiff contends that NAPA should be held strictly liable for manufacturing and selling a defective and unreasonably dangerous product; that NAPA was negligent in the design, manufacture, and inspection of the battery; that NAPA failed to warn purchasers of its batteries of a latent dangerous condition; that NAPA breached an implied warranty of merchantability; and that NAPA misrepresented a "material fact concerning the character or quality" of the battery.

NAPA seeks summary judgment on the ground that it neither manufactured, sold, inspected, nor, in any other fashion, placed the allegedly defective battery on the market. As evidentiary support for this assertion, NAPA submitted the affidavit of its president, Robert E. McKenna. Mr. McKenna explains that NAPA is a nonprofit membership organization which provides marketing and consulting services to its member companies. According to McKenna, NAPA develops marketing concepts and programs and offers them to its members who may either use them or not as they choose. NAPA also licenses the use of its trademark by manufacturers and members of its association. NAPA charges no fee for the use of the NAPA name. Distribution of parts is done by five corporations who are members of NAPA and are licensed to use the NAPA trademark. Genuine Parts, Inc., also named as a defendant, is a member of NAPA. As such, it was authorized to allow its independently owned customer, Ruleville Parts, to use the NAPA name. The various member companies contribute to fund national advertising under the NAPA name, but NAPA itself does not manufacture, market, test, inspect, distribute, or warehouse any products.

NAPA contends that because it was not a seller of the exploding battery that it is not liable under any of the theories advanced by the plaintiff.

## II.  DISCUSSION

### A.  Strict Liability and Negligence

■ Mississippi has adopted the approach to strict liability for a defective product that is set forth in Restatement (Second) Torts § 402A. *Coca Cola Bottling Co., Inc. of Vicksburg v. Reeves*, 486 So.2d 374, 377 (Miss.1986). Section 402A states the general rule that

> one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

The statement of the rule makes it obvious that strict liability for injury caused by a defective product is not to be imposed on one who neither manufactures nor sells the products.

■ Mississippi also recognizes a cause of action for negligence in the design or manufacture of a product when the design or manufacturing flaw causes injury, *State Stove Mfg. Co. v. Hodges*, 189 So.2d 113, 118 (Miss.1966) (adoption of § 402A strict liability standard "does not preclude liability based upon the alternative ground of negligence of the manufacturer or seller"). However, it is also clear that liability for the negligent design or manufacture of a product ordinarily cannot be imposed on one who neither designed nor manufactured the product.

There is one theory under which a manufacturer's liability may be imputed to one other than the manufacturer which has been applied by the Mississippi Supreme Court in both negligence and strict liability cases. The theory is expressed in the Restatement (Second) Torts § 400, where it is stated that "one who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." This rule was first embraced by the Mississippi Supreme Court in *Swift & Co. v. Hawkins*, 174 Miss. 253, 164 So. 231 (1935). In that case, the court applied the rule from § 400 to impose

liability on a distributor of cheese who had not made the cheese but had allowed its name to be stamped on the wrapper. *Hawkins* was a negligent manufacturing case. In *Coca Cola Bottling Co. v. Reeves, supra,* the state supreme court applied the rule in a strict liability case to hold Coca Cola liable for a manufacturing defect in a carton which bore its trademark, even though it had not manufactured the carton. In *Reeves,* the court stated that a manufacturer's liability could be imputed to "one who sells or distributes as his own a product manufactured by another." *Id.* at 378.

■ The question raised by this case is whether liability may be imputed to an organization which allows its name to be placed on a product but neither sells nor distributes the product. There are no Mississippi cases on point, but the comments to § 400 and the language quoted from *Reeves* suggest that § 400 does not apply to one who is not a seller or distributor of a product. Comment "a" to § 400 says that "the words 'one who puts out a chattel' include anyone who supplies it to others for their own use or for the use of third persons, either by sale or lease or by gift or loan." The uncontradicted evidence is that NAPA did not supply this battery to anyone. The Fifth Circuit, in a case decided under Texas law, has held that § 400 does not apply to one who allowed the manufacturer to use its name on a product but was itself neither a manufacturer nor distributor of the product. *Nelson v. International Point Co.,* 734 F.2d 1084 (5th Cir.1984). Of course, the decision is not binding on the court in the instant case, but in the absence of a Mississippi case on point, *Nelson* provides some guidance.

Some courts have imposed liability on licensors of trademarks for injuries caused by products sold under the licensors' mark. Liability has been imposed under two different theories—that the trademark is evidence of the licensee's apparent authority to act on behalf of the licensor and that a trademark licensor is involved in the "stream of commerce in which the product flows." Goldstein, *Products Liability and the Trademark Owner: When a Trade-*

*mark Is A Warranty,* 32 Bus.Law 957 (1977). However, this court is not aware of any case where liability has been extended to a trademark licensor who neither engaged in the manufacture or distribution of products nor received any sort of financial benefit from the licensing of the trademark.

As NAPA points out in its brief, the function that it serves in the marketing of automobile parts is basically the same as that served by an independent marketing consultant or advertising agency. At this time there is apparently no state which extends liability for injuries caused by defective products to those who merely devised the marketing or advertising scheme under which the product is promoted. Of course, NAPA goes one step further and actually allows the use of its name on certain products. The question of whether liability should be extended to include those in NAPA's position, if indeed there are any other entities so situated, is an interesting one. Valid arguments could be raised on both sides of the question. However, as the court views this case, this question need not be answered. NAPA clearly was not so involved in the placing of this battery in the stream of commerce that it should be treated as a manufacturer. Any other theory which might arguably extend liability to NAPA would require proof that the plaintiff had relied on the NAPA name in purchasing the battery. Not only is there no evidence before the court on this point; the plaintiff has not even alleged that this was the case.

The foregoing discussion also disposes of the plaintiff's failure to warn claim. Failure to give an adequate warning is a marketing defect which renders a product "unreasonably dangerous" for strict liability purposes. *Jackson v. Johns–Manville Sales Corp.,* 727 F.2d 506, 515 (5th Cir. 1984). One in NAPA's position should no more be held to have breached a duty to warn of dangers inherent in a product produced and distributed by others than it should be held to have breached its duty to avoid placing an unreasonably dangerous product on the market.

### B. Implied Warranty

 Plaintiff also asserts a claim against NAPA for breach of the implied warranty of merchantability.

A warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

Miss.Code Ann. § 75–2–314 (1972).

Although the section does not expressly say that the warranty is impliedly made only by distributors of goods, that is the clear intent. It would make no sense to condition the existence of the warranty on the seller's being a merchant and then extend liability for breach of the warranty to one who was not in the position of seller.[1] The code defines a seller as "a person who sells or contracts to sell goods." Miss. Code Ann. § 75–2–103(1)(d) (1972). Because NAPA did neither, it cannot be liable for breach of the implied warranty of merchantability.

### C. Misrepresentation

 The plaintiff states in his complaint that this cause of action is based on the rule announced in Restatement (Second) Torts § 402B. By its own language, that rule applies only to "[o]ne engaged in the business of selling chattels ...". As already discussed, NAPA is not a seller of goods. Furthermore, there is no allegation that any representation was made by NAPA concerning this battery. For those reasons, this claim must fail as well.

### III. CONCLUSION

The evidence shows that NAPA is not so directly connected with the manufacture or sale of this battery to be liable under a straightforward application of any products liability theory.

Nothing that is said in this opinion is meant to suggest that the traditional prod-

ucts liability theories are inflexible and therefore cannot be adapted to innovations in the marketplace. Perhaps the one overriding concern behind the court's decision is that extension of liability for a defective product to one in NAPA's position does not serve the public policy interests that have guided the development of products liability law in this country. The general idea behind that development has been to place liability for injuries caused by defective products on those most readily able to spread the cost among all consumers—i.e., those in a position to control the price of the product. NAPA is a nonprofit organization with apparently no control over the price of the products sold under its name.

NAPA's motion for summary judgment is well taken.

---

1. Mississippi has extended liability for breach of implied warranty to a lessor of goods where the contract of lease is analogous to a sale. *J.L. Teel Co. v. Houston United Sales, Inc.*, 491 So.2d 851

(Miss.1986). However, there is no suggestion in the cases that Mississippi would extend warranty liability to one who did not distribute goods in substantially the same way that a seller does.