881 So.2d 288 (2004)
Rosemary HARRISON, Administratrix of the Estate of Sidney Harrison, Deceased, Individually and on Behalf of the Wrongful Death Beneficiaries of Sidney Harrison, Deceased, Appellants,
v.
B.F. GOODRICH COMPANY, Appellee.
No. 2002-CA-00271-COA.
Court of Appeals of Mississippi.
March 9, 2004.
Rehearing Denied June 8, 2004.
Certiorari Denied September 2, 2004.
*289 C. Kent Haney, Dana J. Swan, Clarksdale, Attorneys for Appellant.
O. Stephen Montagnet, W. Thomas McCraney, Jackson, Attorneys for Appellee.
Before McMILLIN, C.J., IRVING and MYERS, JJ.
McMILLIN, C.J., for the Court.
¶ 1. This case comes before the Court as an appeal from a grant of summary judgment in favor of the defendant, B.F. Goodrich Company (hereafter "Goodrich"). It is a wrongful death claim brought on behalf of the wrongful death beneficiaries of Sidney Harrison, who died when the van in which he was riding as a passenger overturned. The beneficiaries were the plaintiffs in the trial court and are the appellants before this Court. For the sake of brevity, they will be referred to as "the Beneficiaries." The claim against Goodrich consisted of an allegation that the accident resulted when a defectively manufactured *290 tire bearing the B.F. Goodrich name blew out.
¶ 2. The trial court granted summary judgment based on the uncontested fact that Goodrich did not manufacture or market the allegedly defective tire but that it had been manufactured by another entity having no business connection to Goodrich beyond the fact that Goodrich had entered into a licensing agreement permitting the manufacturer to place Goodrich's name on the tire.
¶ 3. It is from that ruling that the Beneficiaries have perfected this appeal.
¶ 4. There is an additional issue on appeal involving an unsuccessful attempt by the Beneficiaries to amend their complaint to bring in as additional defendants those entities believed to have been engaged in the actual manufacture of the blown tire.
¶ 5. We find no reversible error in the trial court's decision to grant summary judgment in favor of Goodrich. We also conclude that the motion for leave to amend was never properly presented to the trial court for decision and must be deemed as having been abandoned; the result being that the matter may not be raised on appeal.

I.

Summary Judgment
¶ 6. The evidence is undisputed that the named defendant, B.F. Goodrich Company, was not directly involved in the design, manufacture, or distribution into commerce of the allegedly defective tire. By affidavits and through depositions, uncontradicted facts emerged showing that Goodrich ceased all tire manufacturing or marketing activities no later than 1988, and that the tire in question, though bearing the trademark "B.F. Goodrich," was not manufactured until approximately 1991. By that time, another manufacturing entity was producing tires bearing the Goodrich trademark under authority of a trademark licensing agreement between that entity and Goodrich.
¶ 7. The direct allegations in the original complaint against Goodrich set out a products liability claim based on strict liability in tort. Products liability claims based on principles of strict liability for defectively manufactured items were first recognized in Mississippi when the Mississippi Supreme Court applied Section 402A of the Restatement (Second) of Torts in State Stove Manufacturing Co. v. Hodges, 189 So.2d 113, 118 (Miss.1966), which involved the explosion of a water heater. The overarching principles of strict liability for manufacturers and marketers of goods have since been codified by the Legislature in Section 11-1-63 of the Mississippi Code.
¶ 8. Both the original restatement relied on by the supreme court and the legislatively enacted provisions governing strict liability apply by their terms to those actually engaged in the manufacture and marketing of a product. The restatement dealt exclusively with the liability of a "seller," which necessarily included the manufacturer of a product who put the product into the stream of commerce even though there may have been one or more intermediate sales of the product before it reached the consumer or user who ultimately suffered injury due to the product's defective or dangerous condition. It is plain that, on the facts of this case, Goodrich cannot be brought into the definition of one on whom strict liability is placed by virtue of Section 402A. The present statute, Section 11-1-63, by its explicit terms, confines product liability claims to manufacturers or sellers of products. Miss.Code Ann. § 11-1-63(a) (Supp.2003). Again, because Goodrich fits neither of these descriptive terms on the uncontroverted facts before the Court, we are satisfied *291 that Goodrich was entitled to summary judgment on the theory of recovery advanced on the face of the complaint.
¶ 9. However, though there has been no subsequent amendment to the complaint to allege some alternate theory of recovery, it is evident from our review of the briefs and record before this court that the Beneficiaries, by agreement or at least acquiescence, were permitted to raise a separate but related theory of recovery against Goodrich. That theory of recovery has been discussed under the general heading of the "apparent manufacturer" theory. That theory of recovery was set out in Section 400 of the Restatement (Second) of Torts and states, in part, that "[o]ne who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer." Restatement (Second) of Torts § 400 (1965). Other courts have made short work of such claims, pointing out that the section imposes liability only on a party somehow engaged in "putting out" the item and observing that a trademark licensor is not engaged in any aspect of "putting out" the product.
¶ 10. By way of example, in Affiliated FM Insurance Co. v. Trane Co. 831 F.2d 153, 156 (7th Cir.1987), strict liability was sought to be imposed against Trane, who had designed heating equipment that caused a fire, though the equipment itself had been manufactured by Trane-Canada, a legally distinct entity. The court refused, saying that Trane had no part in the "putting out" of the heater since it "was not involved in the manufacture, sale or installation of the heater." Id. at 156.
¶ 11. In a case specifically dealing with the liability of a trademark licensor for defective products bearing the licensor's logo, the United States District Court for the Northern District of Mississippi considered a personal injury claim caused by an exploding vehicle battery marketed as a "NAPA 7000 series battery" and purchased from a parts house that was a member of the National Automotive Parts Association (hence NAPA). Harmon v. Nat'l Auto. Parts Ass'n, 720 F.Supp. 79 (N.D.Miss.1989). The court granted summary judgment to NAPA when it was shown that NAPA was a membership organization providing marketing and consulting services to its members and that it licensed the NAPA trademark to several member organizations engaged in the manufacture and marketing of parts under the NAPA label. Id. at 80. The court concluded that there was no authority to impose strict liability on NAPA in those circumstances where it was not shown to have been engaged in either the manufacture or distribution of the product. Id.
¶ 12. There is one possible distinction between the Harmon case and the one now before us since the court in Harmon went on to specifically note that NAPA did not receive "any sort of financial benefit from the licensing of the trademark." Id. In the case before our Court, the record reveals that Goodrich extracted a one-time payment of $1,000,000 for the right to use the B.F. Goodrich logo. Goodrich, in its brief, attempts to make the point that no money was received by it for the trademark license in the year that the tire was manufactured; however, the method of payment contractually agreed upon  whether a one-time lump sum payment or an on-going series of payments  does not, in our view, alter the fact that Goodrich was compensated for the use of its trademark name, whereas in the Harmon case, NAPA was not. The question then becomes whether that distinction compels a different outcome.
¶ 13. We determine that it does not. The core fact that Goodrich was not directly involved in the manufacture or distribution *292 of the allegedly faulty tire remains unchanged, and products liability law limits itself to imposing liability on entities engaged in the actual production or sale of goods.
¶ 14. A more compelling argument for liability might be made if it was alleged that an individual specifically selected or relied upon a product on the determination that it bore the trademark of a particular business entity that the individual, for whatever reason, felt comfortable in trusting. In that situation, a business purposely inducing a belief through use of its trademark logo that it was the producer of the product might arguably incur some liability to one injured from such a defective product because of the specific  and justified  belief that the product was manufactured by the company whose name appears thereon, even if it was shown that the name appeared solely as the result of a trademark licensing arrangement. That claim, however, is not one that falls within the area of products liability law, which imposes strict liability on actual manufacturers and sellers and is the theory of recovery under which the Beneficiaries pursued their claim.
¶ 15. The federal district court in Harmon found the proposition that liability might be established on that alternative basis to be "an interesting one," but concluded that it was not relevant to the case before it since there was neither an allegation nor proof that Harmon had purchased or used the battery based on an understanding that it had been manufactured by NAPA and that NAPA was an entity in which, for some articulated reason, he elected to place substantial trust. Id. at 81. This case is in the same posture.
¶ 16. The evidence shows that Harrison was a passenger in a vehicle belonging to the State of Mississippi, and there is no assertion nor proof that he elected to ride in the vehicle because he was led to believe that the tires, or at least one tire, on the vehicle had been manufactured by Goodrich, a company in which he was prepared to put his trust. For the same reason set out by the federal district court, we find it unnecessary to reach this "interesting question" of a purposely-induced misunderstanding of what entity actually manufactured a product that proved to be unreasonably hazardous.
¶ 17. In concluding that there is no liability for an allegedly defective product on the part of a trademark licensor who was not involved in the design, manufacture, or sale of the product under the facts before us, we note that this appears in accord with the applicable provisions in Section 14 of the Restatement (Third) of Torts, dealing with apparent manufacturer issues. The official comment to the section contains the following commentary:
The rule stated in this Section does not, by its terms, apply to the owner of a trademark who licenses a manufacturer to place the licensor's trademark or logo on the manufacturer's product and distribute it as though manufactured by the licensor. In such a case, even if purchasers of the product might assume that the trademark owner was the manufacturer, the licensor does not "sell or distribute as its own a product manufactured by another." Thus, the manufacturer may be liable under §§ 1-4, but the licensor, who does not sell or otherwise distribute products, is not liable under this Section of this Restatement.
Trademark licensors are liable for harm caused by defective products distributed under the licensor's trademark or logo when they participate substantially in the design, manufacture, or distribution of the licensee's products. In these circumstances they are treated as sellers of the products bearing their trademarks.
*293 Restatement (Third) of Torts: Product Liability § 14, cmt. d (1998).
¶ 18. We conclude that the trial court was correct in granting summary judgment in favor of Goodrich, and we affirm as to that issue on appeal.

II.

Leave to Amend
¶ 19. The Beneficiaries, after the hearing on Goodrich's summary judgment motion but while the trial court still had the motion under advisement, filed a motion for leave to amend the complaint to bring in as additional defendants certain entities that were said to have been involved in the manufacture of the tire. These additional defendants had apparently been unearthed after it came to light that Goodrich had not been the tire's actual manufacturer or marketer. The motion was filed on October 1, 2001.
¶ 20. Within a few days of the filing of the motion for leave to amend, the court entered a written opinion ruling in Goodrich's favor on the summary judgment motion. A subsequent final judgment was entered on January 17, 2002. Neither the court's opinion nor the formal final judgment made mention of the motion for leave to amend. The Beneficiaries filed a notice of appeal from that judgment without making any effort to obtain a hearing or ruling on their pending motion for leave to amend. Now, in this appeal, the Beneficiaries contend that it was reversible error for the trial court to not grant the leave to amend.
¶ 21. The denial of a motion by the district court, although not formally expressed, may be implied by the entry of final judgment (which is in effect an overruling of pending pretrial motions) or of an order inconsistent with the granting of the relief sought by the motion. Addington v. Farmer's Elevator Mut. Ins. Co., 650 F.2d 663, 666 (5th Cir.1981).
¶ 22. In the case before us, the motion for leave to amend was filed on October 1, 2001. Although there is no evidence in the record that a copy of the motion was forwarded to the trial court, we note the standing requirement of Rule 4.03 of the Uniform Rules of Circuit and County Court that "[t]he moving party at the same time [as the motion is filed with the clerk] shall mail a copy thereof to the judge presiding in the action...." URCCC 4.03(1). The final judgment, based on the trial court's ruling on the summary judgment motion, was not entered until January 17, 2002. The Beneficiaries were certainly aware of the fact that, during this extended period of over three and one-half months, the trial court had a motion for summary judgment under advisement, yet the record does not reflect any effort on the Beneficiaries' part to bring the motion for hearing. "It is the duty of the movant, when a motion ... is filed ... to pursue said motion to hearing and decision by the court." URCCC 2.04.
¶ 23. Considering all of the foregoing circumstances, we conclude that, in the situation where the court was actually aware of the motion (or certainly would have been on notice of the pending motion had the requirements of Rule 4.03 been followed) and where the Beneficiaries permitted over three and one-half months to pass without making any effort to pursue a ruling on the motion in the face of knowledge that the trial court had taken the summary judgment motion filed against them under advisement, the Beneficiaries must be seen as having abandoned their motion. By suffering the entry of a final judgment against them on these facts without having pursued an actual ruling by the trial court on the merits of their motion to amend or by attempting to bring *294 the matter before the trial court in a post-judgment motion under Rules 59 or 60 of the Mississippi Rules of Civil Procedure, they must now be barred from an attempt to raise for the first time in this appeal the issue of whether the motion should, or should not, have been granted by the trial court. Mitchell v. Glimm, 819 So.2d 548, 552(¶ 11) (Miss.Ct.App.2002) (citing Gatlin v. State, 724 So.2d 359, 369(¶ 43) (Miss.1998)).
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF TALLAHATCHIE COUNTY IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.